# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Sundre Sand & Gravel, Inc., | ) |
| Plaintiff, | ) **ORDER DENYING MOTIONS** <br> ) **FOR SUMMARY JUDGMENT** |
| vs. | ) |
| Hensley R. Contracting, Inc., | ) |
| Defendant. | ) Case No. 4-14-cv-00071-CSM |

Before the court are cross-motions by the parties for summary judgment. (Doc. Nos. 33 & 54). Plaintiff is a North Dakota aggregate supplier and contractor of small road projects. Defendant is a construction company from the Southeastern United States that, in part, specializes in doing disaster work for FEMA, particularly installing temporary housing.

The disputes between the parties arise out of the construction of a mobile home park in Minot, North Dakota to provide housing for persons displaced as consequence of the severe flooding that occurred in Minot in 2011. Defendant worked out a deal with plaintiff to submit a bid and be the nominal prime contractor for the project because of the need for a local contractor to be the prime contractor. Plaintiff then subcontracted all of the work to defendant and the defendant, in turn, then purchased aggregate for the project from plaintiff. The aggregate supply was only a portion of the over eight million dollar project.

In what follows, (1) "the Corps" is the Army Corps of Engineers; (2) the "Corps Contract" is the contract that, nominally, was between the Corps and plaintiff; (3) the "Subcontract" is the contract between plaintiff and defendant in which plaintiff subcontracted all of the work under the Corps Contract to the defendant; and (4) the "Quote" is plaintiff's quote to defendant for providing

1

Class 5 aggregate and screened sand as a supplier or lower tier subcontractor.

After reviewing the cross-motions, the deposition testimony, and other supporting documents, there does appear to be material questions of disputed fact as well as inferences to be drawn from facts that prevent the granting of either motion. That being said, and while no final ruling is being made now, the court has the following observations with respect to what it has reviewed so far:

- The court has difficulty understanding defendant's contract-based arguments for why the prices quoted to the defendant are not subject to the conditions set forth in the Quote. In other words, the court doubts the contention of defendant's project manager that plaintiff was required to deliver the quantities of Class 5 aggregate and screened sand set forth in Quote at the quoted prices, even if it had to helicopter the materials in. On the other hand, there does appear to be material facts in dispute with respect to whether or under what circumstances plaintiff can collect for the material that was delivered at a price greater than the quoted price. And, how the Quote is construed may impact upon that as well as more specific facts in terms of what actually transpired in the field. For example, while the court does not know whether this was an issue in this case or not, assume for the moment that one of the reasons that plaintiff did not always use belly or side-dump trucks (which the quoted prices were limited to) was because it did not have enough of them and could not rent or subcontract for more. Who would bear the risk in this situation of having to use end-dump trucks with less capacity? Also, even if plaintiff was not contractually *required* to supply the materials at the quoted prices if end-dump trucks had to be

used (which appears to be the case based on a facial reading of the Quote), did plaintiff have to get defendant's permission before supplying the material using a method other than belly or side-dump trucks? Or, was the agreement that, when defendant wanted material delivered, plaintiff could use end-dump trucks so long as it acted in good faith with the cost to do so simply being an open term and subject to the "reasonable price" provisions of the UCC?

- It appears from some of the deposition testimony that plaintiff charged more for weekend work. Plaintiff's quote, however, does not specify the time periods for delivery—one way or other. What was plaintiff's obligation in this instance? Provide the material immediately upon demand, even if on a weekend? Or, was plaintiff entitled to work at its own reasonable schedule, including having the right to stockpile material so it would not have to pay extra to its truckers and other personnel for weekend work? In determining whether weekend work was contemplated or not, does the speed with which the work had to be performed under the Corps Contract a factor? If so, and if weekend work was going to be necessary, should plaintiff have known or expected that when it gave the Quote?

- It appears that plaintiff also charged extra in some instances for material that was delivered due to purported haul road maintenance and watering by plaintiff. If plaintiff undertook that work, was it ordered by the defendant? Did it have to be? Assuming that plaintiff is entitled to compensation for the work that it did, does that right arise out of its obligations to deliver the material under the Quote or does it arise under the Subcontract in the form of a "back charge" for plaintiff performing

work that it contends defendant was required to perform? If it is the latter, is the appropriate form of compensation an adjustment to the unit prices for the delivered quantities of material or is it reimbursement on a time, material, and equipment basis?

- One of defendant's arguments appears to be that plaintiff should have affirmatively sought a change order from the Corps for the additional costs arising from the site conditions or at least requested that defendant prepare the necessary paperwork for a change order. It appears to be the assumption of the defendant's project manager that such a change order would have been approved. At this point, the court is not so sure, particularly not having reviewed the Corps Contract. It appears from the deposition testimony that the parties were aware of the wet conditions and the Corps may have taken the position that the contract work should have been priced accordingly. And, if that is the case, then the defendant may bear the risk of not having better protected itself, either by not causing more to be bid in light of the wet conditions or negotiating different provisions with the plaintiff in terms of the material that plaintiff supplied and the conditions under which it agreed to supply the material.

- For additional work or services performed by plaintiff beyond the supplying of material, the court has substantial doubts about defendant's contention that plaintiff was compensated for it by its retention of 8% of the project revenue. This is because plaintiff subcontracted to defendant the performance of virtually all of the work to be performed under the Corps Contract. On the other hand, does the receipt of 8%

of the project revenue reduce the amount plaintiff may claim for reimbursement of general overhead to the extent that might be a component of any reasonable prices to be determined?

- If the court is required to determine what a reasonable price was either for material supplied or work performed by plaintiff, is it a reasonable market price or is it a price that is sufficient to allow for the recovery of the direct costs and some reasonable margin for general overhead and profit?

- At this point, the court is uncertain about a partial payment on one invoice amounting to acquiescence with respect to some of the prices charged by plaintiff.

In this court's view, the contractual relationship between the parties with respect to the supply of aggregate appears to have several gaps that likely may be subject to the "gap filling" provisions of the UCC and its overall "good faith" requirements. At this point, neither party should feel assured of its position in terms of what might be the outcome of their respective interpretations, much less their application to the particular facts. While there is a lot of generality in the deposition testimony in terms of what work was performed, there is a dearth of evidence—at least in terms of what the court has reviewed so far—with respect to what actually transpired in the field on a day-to-day (and, perhaps, hour-by-hour) basis in terms of the flow of the work, the site conditions on any particular day, and how the work was sequenced, coordinated, and ordered.

Given these uncertainties and the trial likely having to be a fact-intensive and costly exercise, the parties might be well-advised to reevaluate their respective positions and consider controlling the outcome by a settlement.

Based on the foregoing, the cross-motions for complete or partial summary judgment (Doc.

Nos. 33 & 54) are **DENIED**.

      **IT IS SO ORDERED**.

Dated this 2nd day of October, 2018.

                                        */s/ Charles S. Miller, Jr.*
                                        Charles S. Miller, Jr., Magistrate Judge
                                        United States District Court